IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CR-346-2-BO

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| DONALD KENT BLAINE | ) | |
| | ) | |

This matter is before the Court on the government's motion to determine the applicability of the joint crime exception to the spousal communications privilege [DE 75] and the government's motion to postpone further briefing or consideration of its spousal privilege motion [DE 83]. The government's motion to determine the applicability of the joint crime exception is GRANTED. As such, the government's motion to postpone further briefing on this issue is DENIED as moot.

## BACKGROUND

This medical billing fraud case involves a husband and wife indicted by a grand jury in a twenty-seven count superseding indictment. Donald and Charlene Blaine have been charged with conspiracy, health care fraud, and other crimes. On August 20, 2012, Charlene Blaine entered a guilty plea to count 15 of the superseding indictment. The couple operated a business - Respi-Test, Inc. - that performed pulse oximetry testing to determine whether patients required oxygen. Charlene was allegedly responsible for the clinical side of the business while Donald handled the

1

billing. The alleged crime involves fraudulent billing practices wherein the company would seek reimbursement under an improper medical billing code. The difference between the proper and improper billing code was approximately $250 for each procedure performed. The higher value code was billed in 99.8% of the company's Medicare billings suggesting that the business relied almost exclusively on this billing practice. In at least one phone call — in October, 2007 — both Charlene and Don were confronted by Cynthia Gray, a provider who often referred patients to Respi-Test, about these questionable billing practices.

The government has moved to determine the applicability of the joint crime exception to the marital communications privilege.[1] Specifically, the government requests that this court (1) find that the joint crime exception applies to all communications between Donald and Charlene Blaine relating to Respi-Test's operation, its billing, its formation, and their billing practices in general; (2) allow the government to question Charlene Blaine about such communications; and (3) hold that the government may request and review documents or other items that contain or relate to such communications. Subsequent to its initial motion the government moved to postpone further briefing on the privilege issue because a possible conflict exists in that defense counsel previously represented Mrs. Blaine and counsel's interests in this matter are adverse to hers.

## DISCUSSION

Among other things, a privilege is a "limited right to protect the confidentiality of certain communications or information." *See* THE NEW WIGMORE: EVIDENTIARY PRIVILEGES § 1.3.

---

[1]The government uses the phrase "spousal communications privilege" to identify the privilege at issue. This Court uses the label "marital communications privilege" in order to prevent confusion with the "spousal testimonial privilege" discussed *infra*.

2

Marriage brings with it two evidentiary privileges: a spousal testimonial privilege and a marital communications privilege. The spousal testimonial privilege provides each spouse with the power to refuse to testify against the other. *United States v. Trammell*, 445 U.S. 40, 51 (1980). On the other hand, the marital communications privilege is a power held by the defendant-spouse and allows him to bar the disclosure of confidential communications between him and his wife. *United States v. Parker*, 834 F.2d 408, 410-11. (4th Cir. 1987).

Here, the marital communications privilege is at issue. Information that is privately discussed between husband and wife is confidential and protected by this privilege. *Blau v. United States*, 340 U.S. 332, 333 (1951). However, there are exceptions to this protective rule. Marital communications having to do with the commission of a crime in which both spouses played a role are not protected. *United States v. Broome*, 732 F.2d 363 (4th Cir.).

The so-called joint crime exception is an attempt at balancing the sanctity and privacy of the marital relationship against the public need for the "revelation of truth and the attainment of justice." *United States v. Parker*, 834 F.2d 408 (4th Cir. 1987). Because of this competing public interest the privilege itself is quite narrow and the party asserting the privilege bears the burden of establishing all of its essential elements. *United States v. Acker*, 52 F.3d 509, 515 (4th Cir. 1995). On the other hand, the *Parker* court found that the exception to the privilege is broad and held that it includes statements made during the commission of a crime as well as "statements made in the course of successfully formulating and commencing joint participation in criminal activity.' 834 F.2d, at 413. Further, in *Parker* the court found that spouses are considered to be "joint participants" when the testifying spouse voluntarily admits to their participation in the crime.. *Id.*, at 412. Spouses may be joint participants even if they are not co-defendants or only

3

one of them has been indicted. *Id.*

Here, both spouses have been indicted and Mrs. Blaine has entered a guilty plea. This is sufficient to meet the participation standard set forth by the Fourth Circuit in *Parker*. The defendant argues that there must be a prima facie showing of fraud in order for the joint crime exception to apply. As argued by defendant this may be the standard for the exception to the attorney-client privilege, but it is not the standard applicable to the instant matter. Because Mrs. Blaine is a co-defendant in this matter and has entered a guilty plea she is a joint participant for purposes of the exception to the marital privilege. As such, the exception applies to communications between Mr. and Mrs. Blaine relating to the commission of the crimes at issue and the martial privilege does not protect them from disclosure.

Defendant argues that such a decision by this Court treads into uncharted legal territory. Defendant's argument on this point is misguided. Defendant cites In re *Grand Jury Proceedings #5*, 401 F.3d 247 (4th Cir. 2005) to support his claim that all of Charlene's potential testimony and related documents should be reviewed *in camera* prior to being released to the government. As noted by the defendant, In re *Grand Jury Proceedings # 5* involved the attorney-client privilege and was in a significantly different posture than the instant case. As such, the holding in that case is inapplicable. Although, the public interest in protecting attorney-client communications is worthy of greater judicial protection, the defendant essentially seeks to apply the requirements of that privilege to bar discovery proceedings under a different privilege entirely. Moreover, defendant's requests would require judicial supervision of almost every interaction between the government and Mrs. Blaine.

4

During discovery, the parties often consider extensive evidence that may not be admissible at the trial of the matter for any number of reasons.[2] Nevertheless, defendant argues for the inverse of this principle and suggests that even if the joint crime exception does apply to this situation it should only apply in the trial setting and any marital communications should be off-limits until such time. The rule for which the defendant argues is unworkable. This Court is unable to see how the government, or any counsel, would go about preparing its case for trial if it was forbidden to speak with its own witnesses about their testimony until they were seated in front of a jury. A privilege's existence is determined by the nature of the communication at issue and not the location in which that communication may sometime later be disclosed.

Finally, the defendant argues that in granting the government's request this Court will be granting unlimited access to the Blaine's marital communications. The government has only requested access to those communications relating to the crime at issue and that is the only access granted by the Court in this order. To the extent the government seeks discovery relating to non-crime related, and therefore privileged, marital communications between Mr. and Mrs. Blaine that information is protected. Given the narrow nature of the marital communications privilege and the expansive nature of its joint crime exception this Court finds that the exception is properly applied here.

## CONCLUSION

The government's motion to determine the applicability of the joint crime exception to the spousal communications privilege and its discovery requests pertaining to communications between Mr. and Mrs. Blaine are GRANTED. The government's subsequent motion to postpone

---

[2]This Court reserves all questions of admissibility for the trial of this matter.

5

briefing on this issue is DENIED as moot.


SO ORDERED

This 25 day of September, 2012.

                                              TERRENCE W. BOYLE
                                              UNITED STATES DISTRICT JUDGE